**UNITED STATES of America, Plaintiff**

v.

**Jose A. RIVERA–CALDERON, Defendant**

**No. CRIM.03–294(DRD).**

United States District Court, D. Puerto Rico.

Jan. 11, 2005.

---

Ernesto G. López–Soltero, AUSA, for Plaintiff.

Thomas R. Lincoln, San Juan, PR, for Defendant.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court is defendant's, José A. RiveraCalderón, *Motion for Court to Declare the Sentencing Reform Act's Mandatory Provisions, 18 U.S.C. § 3553(b) Unconstitutional and for Further Remedy as a Result Thereof* (Docket No. 168). Defendant requests the Court to declare the effect of *Blakely v. Washington,* 542 U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) over certain mandatory provisions of the Sentencing Reform Act. Defendant sustains that the Supreme Court's decision declaring the Washington's guidelines unconstitutional applies to the federal Sentencing Guidelines and to the Sentencing Reform Act in anything that would be incompatible with said decision. Defendant further alleges that if certain dispositions, related to the enhancement of the sentence, are in fact unconstitutional, then the Court should determine if said provisions of the federal Sentencing Guidelines are in fact severable allowing some of the dispositions of the Guidelines to survive. Further, defendant sustains that the courts should not be allowed to submit to the jury a special verdict as to any upward adjustments sought by the government since the statute provides for only the judge to increase a sentence within the statutory minimum and maximum provisions of the Act. The United States duly opposed. (Docket No. 173). On September 29, 2004, the matter was referred to Magistrate Judge Camille L. Vélez–Rivé for a Report and Recommendation, hereinafter "R & R" (Docket No. 196).

On November 4, 2004, the Magistrate Judge issued an R & R (Docket No. 218). However, defendant did not comply with a timely opposition.[1] Pursuant to Fed.

---

1. On November 15, 2004, the defendant requested an extension of time to the ten (10) day period, allowed under the Local Rules, up to and including November 24, 2004, to submit his objections to the R & R. The extension of time requested was granted by the under-

R.Civ.P. 72(b), "[a]bsent [timely] objection [ . . . ], the district court ha[s] a right to assume that [the parties] agreed to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992). *See also Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–151 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir.1993) (stating that "[objection] to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.*, 848 F.2d 271, 275 (1st Cir.1988)(**failure to file a timely objection shall constitute a waiver of the right to de novo, review by the district court and to appeal the district court's order**); *Borden v. Secretary of H.H.S.*, 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised"). *See generally United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980).

■ Since defendant did not file a timely objection to the Magistrate's determination, the Court need only satisfy itself that there is **no plain error** on the face of the record in order to accept the unopposed R & R. *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415, 1419 (5th Cir.1996)(en banc)(extending the deferential "plain error" standard of review to the unobjected to legal conclusions of a magistrate judge); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir.1982)(en banc)(appeal from district court's acceptance of unobjected findings of magistrate judge reviewed for "plain error"); *Nogueras–Cartagena v. United States*, 172 F.Supp.2d 296, 305 (D.P.R.2001)("Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding FED.R.CIV.P. 72(b)); ; *Garcia v. I.N.S.*, 733 F.Supp. 1554, 1555 (M.D.Pa.1990)( "when no objections are filed, the district court need only review the record for plain error").

Notwithstanding all of the above, the Court **reviews on the merits** the Report and Recommendation since the matter involves constitutional dimensions.

### I. The Inquiries

The defendant moves the Court to consider several questions based on constitutional issues to the federal sentencing guidelines mandatory aspects, including whether its provisions could be severed post *Blakely*.[2] The principal challenges raised by the defendant revolve around the impact of the Supreme Court's decision in *Blakely v. Washington* to the federal Sentencing Guidelines and if so whether the mandatory aspects of the Guidelines affected by the decision are severable from the remainder of the Guidelines and the Sentencing Reform Act of 1984.[3]

signed(Docket No. 235). However, the Defendant filed its objections to the R & R on November 26, 2004 (Docket No. 236), that is, past the deadline self imposed and requested by the defendant and granted by the Court.

**2.** *Blakely v. Washington*, 542 U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

**3.** "(1) Whether the Sentencing Reform Act's mandatory aspects, 18 U.S.C. § 3553(b) are unconstitutional in light of the holding in *Blakely v. Washington*, 542 U.S. ——, [124

The Magistrate Judge determined that a ruling as to defendant's contentions is necessary before defendant's trial is held enabling the jury to consider and determine, beyond reasonable doubt, matters which, pursuant to the federal Sentencing Guidelines, are reserved for the sentencing court under the preponderance of the evidence standard. However, the Magistrate Judge concluded that *Blakely* did not directly address the issues of constitutionality, application and construction of the federal sentencing guidelines. As to the severability aspect, in case of a determination that certain mandatory aspects of the Guidelines are, in fact, unconstitutional, the Magistrate Judge determined that "[a]court shall adhere to the elementary principle that the same statute may be in part constitutional and in part unconstitutional, and if the parts are wholly independent from each other, that which is constitutional may stand while that which is unconstitutional will be rejected." *Magistrate Judge's Report and Recommendation* (Docket No. 218, p. 8). Finally, the Magistrate concluded that whether the Sentencing Guidelines may be found constitutional or not, the appropriate remedy must be prospective and that since the First Circuit has yet to decide, she was in no position to make a determination as to the constitutionality of the Sentencing Guidelines. See generally *United States v. Savarese*, 385 F.3d 15 (1st Cir.2004). Hence, the R

& R recommended that those sentencing enhancement factors be submitted to the jury, pursuant to the strict application expressed in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Accordingly, the government is to be authorized to present evidence as to those aspects of the enhancement to the jury since they potentially will also be expected to present said evidence to the court for sentencing purposes. *Magistrate's Report and Recommendation* at p. 10.

## II. Legal Landscape

### A. Blakely v. Washington

The core of defendant's inquiries depends on the application of the Supreme Court's holding expressed in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 applied to the federal Sentencing Guidelines. Therefore, the search for the answers as to defendant's questions must start with a review of the Supreme Court's decision in *Blakely* where the Court determined that the Washington Sentencing Guidelines that permitted an enhancement of the defendant's sentence beyond the statutory maximum, **based on judicial determined facts rather than by facts determined by a jury,** violated defendant's Sixth Amendment right to trial by jury.

S.Ct. 2531 (2004)]; (2) If the answer to the above is in the affirmative, whether said mandatory aspects of the Sentencing Reform Act contained in 18 U.S.C. § 3553(b) are severable from the remainder of the statute, such that the Court should apply the remainder provisions of the Sentencing Reform Act, exclusive of the offending provision; (3) If the Court finds that those mandatory provisions of the Sentencing Reform Act, 18 U.S.C. § 3553(b) are constitutional, even post-*Blakely*, whether the Court has authority to submit to the jury's consideration matters which the Sentencing Reform Act require the Judge and

not the Jury to determine; (4)Should the Court understand that the Sentencing Reform Act allows for submission to the jury matters that are reserved by the Sentencing Reform Act to the Court, whether prudence, due process and simple fairness—and avoidance of prejudice to defendant—require that the Court do so in a bifurcated trial, akin to the procedures followed in capital prosecutions or in criminal forfeitures." *Motion for Court to Declare the Sentencing Reform Act's Mandatory Provisions, 18 U.S.C. § 3553(b) Unconstitutional and for Further Remedy as a Result Thereof* (Docket No. 168 at p. 1–2).

In *Blakely v. Washington, supra,* the defendant was charged with first degree kidnaping pursuant to the Wash. Rev.Code Ann. § 9A.40.020(1). Notwithstanding, defendant plead guilty, admitting the elements, to a reduced charge of second degree kidnaping involving domestic violence and use of a firearm. In sentencing, pursuant to the plea agreement, the State recommended a sentence within the standard range of 49 to 53 months.[4] The judge, however, entered a specific finding of deliberate cruelty and sentenced the defendant to 90 months, thus, rejecting the State's recommendation. The defendant appealed, the State Court of Appeals affirmed the state court and the State Supreme Court then denied discretionary review. The case then reached the United States' Supreme Court.

The Supreme Court then applied the rule established in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 and concluded that defendant's sentence was in direct violation of his Sixth Amendment rights. The Court reiterated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. The Court further clarified that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely v. Washington,* 124 S.Ct. at 2537 citing *Ring v. Arizona,* 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). *Emphasis in the original.* The Court further clarified that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely v. Washington,* 124 S.Ct. at 2537. *Emphasis in the original.* Hence, the Court concluded that whenever a judge imposes a sentence that a "jury's verdict alone does not allow . . . the judge exceeds his proper authority." Id. In other words, "every defendant [who has not accepted his guilt] has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment." Id at 2543. In applying this rule to the case before them, the Supreme Court determined that the trial judge had exceeded his authority when he imposed a sentence relying on facts that were not accepted by the defendant.[5] Hence, the Court concluded that a sentence above the statutory maximum on the basis of judicial fact findings violated the defendant's Sixth Amendment right to trial by jury. In reaching this conclusion, however, the Court did not find the entire state sentencing guidelines scheme unconstitutional but rather the Court found a way of implementing it while respecting the Sixth Amendment. *Id.* at 2540.

---

4. That was the standard range for a sentence for second degree kidnaping with a firearm, pursuant to the Washington Rev.Code Ann., the offense to which the defendant had plead guilty. However, pursuant to the Washington Reform Act, a judge may impose a sentence above the standard range if he finds " substantial and compelling reasons justifying an exceptional sentence" Id at 2535 citing § 9.94.120(2)

5. Since the case never went to the jury due to a plea agreement, any fact that the judge relies upon to enhance the statutory maximum as defined by Apprendi must be accepted by the defendant. Id. At 2541 citing *Apprendi v. New Jersey,.* 530 U.S. at 488, 120 S.Ct. 2348; *Duncan v. Louisiana,* 391 U.S. 145, 158, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) ("When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant stipulates to the relevant facts or consents to judicial fact finding.") *Emphasis added.*

## B. Blakely's Aftermath

The First Circuit has yet to determine whether *Blakely*, which is a decision involving a state sentencing guidelines, should apply to the federal Sentencing Guidelines, impeding the enhancement of a sentence based on judicial factual findings. As aforementioned, the Supreme Court held that the defendant's Sixth Amendment right to be tried by a jury of his peers was violated when a sentence was enhanced based on factual findings made by a judge, rather than reached by the jury or accepted by the defendant. Although the First Circuit has not either applied the Supreme Court's decision in *Blakely* to the federal Sentencing Guidelines, nor has rejected its application, other circuits have already expressed as to the matter. The Fourth, Fifth, Sixth and Eleventh Circuits, have determined that the Supreme Court's decision in *Blakely* does not apply to the federal Sentencing Guidelines. See *U.S. v. Hammoud*, 381 F.3d 316 (4th Cir., 2004); *U.S. v. Piñero*, 377 F.3d 464 (5th Cir., 2004); *U.S. v. Koch*, 383 F.3d 436 (6th Cir.,2004); *U.S. v. Reese*, 382 F.3d 1308 (11th Cir., 2004).

The Fifth Circuit was the first to consider the impact of the *Blakely* decision upon the federal Sentencing Guidelines. Holding that the Blakely rational does not extend to the federal Sentencing Guidelines, the Fifth Circuit concluded that the application as to the federal Guidelines depended "on whether the Guidelines effectively operate[d] as statutes that define offenses with different maximum sentences" or if the Guidelines should be considered "as a tool for channeling the sentencing's historic discretion to choose a sentence within the broad range established by the crime's statutory [ . . . ] minimum and maximum." *U.S. v. Piñero*, 377 F.3d at 470.· The Fifth Circuit considered that the federal Sentencing Guidelines were said tool and as such "a sentencing judge's factual findings

under the Guidelines do not raise the 'maximum sentence' to which the defendant is exposed." Id. Further, in support of this argument, the Fifth Circuit made a distinction between the Washington Sentencing Guidelines and the federal Sentencing Guidelines. The Fifth Circuit sustained that different that in *Blakely*, where the sentencing scheme at issue involved "two distinct statutory maximum sentences with the choice between them turning on judge-made findings of fact,"Id. at 473, the federal Guidelines do not establish maximum sentences under *Apprendi* purposes. The Fifth Circuit reasoned that although the federal Guidelines are binding, they are not statutes that set a maximum sentences. Accordingly, as reasoned by the Fifth Circuit, the *Blakely* decision does not affect the application of the federal Guidelines and defendant's sentence's enhancement, pursuant to the federal Guidelines, based on judicial fact findings does not violate defendant's Sixth Amendment right to a trial by jury. *U.S. v. Piñero*, 377 F.3d at 465–466.

The Eleventh Circuit echoed the Fifth Circuit's rational and agreed that "the constitutional fate of the [federal] Guidelines depend[ed] upon whether viewed: 1) like the Washington statute as defining different offenses with different maximum sentences, such that a Guideline sentencing range unenhanced by judicial fact finding sets a 'maximum' for purposes of *Apprendi;* or 2) as a tool for channeling the sentencing court's discretion within a specific crime's minimum and maximum sentence provided in the United States Code, with that maximum being the only constitutionally relevant 'maximum sentence'" *U.S. v. Reese*, 382 F.3d at 1310 *citing U.S. v. Piñeiro*, 377 F.3d at 470. As the Fifth and the Sixth Circuit, the Eleventh Circuit agreed that the federal Sentencing Guidelines must be viewed as a "tool for channeling sentencing discretion" and that *Blakely* did not compel a departure from

previous Supreme Court precedent and the "long-embraced distinction in the precedent between the Guidelines' ranges and the maxima established in the United States Code for the various offenses." *U.S. v. Reese*, 382 F3d at 1310. Accordingly, the Court concluded that the Blakely decision was inapposite to the federal Sentencing Guidelines.

The Sixth Circuit likewise concluded that *Blakely* does not apply to the federal Sentencing Guidelines. *United States v. Koch*, 383 F.3d at 438. The Sixth Circuit held that the federal Guidelines "are agency-promulgated rules enacted by the Sentencing Commission-a non elected body" and as such they "do not 'vest in the Judicial Branch the legislative responsibility for establishing minimums and maximums penalties for every crime.'" *Id.* at 441 quoting *Mistretta v. U.S.*, 488 U.S. 361, 396, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Accordingly, the Sixth Circuit concluded, since the federal Sentencing Guidelines is not to be viewed as a statute establishing a maximum penalty, the Blakely decision has no effect over them.

Finally, the Fourth Circuit has joined the reasoning of the previously discussed circuits and declined to apply the holding on *Blakely* to the Guidelines. *U.S. v. Hammoud*, 381 F.3d at 345–353. The Fourth Circuit reasoned that the "[a]pplication of Blakely to the guidelines [...] would require a conclusion that the Sentencing Commission performs not a judicial function, but a legislative one. This is so [the Circuit sustained] because *Blakely* applies to the guidelines only if the *Blakely* court redefined the term 'statutory maximum' to include any fact that increases a defendant's potential sentence-regardless of its status as a statute or regulation and regardless of its provenance." *Id.* at 351. The Court concluded that the pertinent question under *Apprendi* and *Blakely* was not "whether judicial fact finding increases

a defendant's sentence to the sentence" that would otherwise be imposed but "whether a judicial factual finding has increased the defendant's sentence beyond what the legislature has authorized." *Id.* at 353. The Court held that since the federal Sentencing Guidelines were not product of the legislature employing its legislative function, the Supreme Court's decision in *Blakely* did "not affect the operation of the federal sentencing guidelines." Id at 353.

On the other hand, the Seventh and Ninth Circuits have held that *Blakely* applies to the federal Sentencing Guidelines. *U.S. v. Booker*, 375 F.3d 508 (7th Cir., 2004); *U.S. v. Ameline*, 376 F.3d 967 (9th Cir., 2004). In *U.S. v. Booker*, a case that at this moment is before the consideration of the Supreme Court, —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004), the Seventh Circuit held that the Supreme Court's decision affected the federal Sentencing Guidelines. In order to reach this conclusion, the Court summarized relevant Supreme Court's decisions that necessarily pointed to said conclusion. First, the Court addressed the Supreme Court's decision in *Apprendi v. New Jersey, supra*, where the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *U.S. v. Booker* 375 F.3d at 510 quoting *Apprendi v. New Jersey*, 530 U.S. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435. In *Blakely*, the Court reasserted that "the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *U.S. v. Booker* 375 F.3d at 510 quoting *Blakely v. Washington*, 124 S.Ct. at 2536. *Emphasis in the original.* Hence, the relevant statutory maximum is that which "the judge can impose without mak-

ing his own findings, above and beyond what the jury found or the defendant admitted." *U.S. v. Booker* 375 F.3d at 510. The Seventh Circuit found that the pattern employed by the federal Sentencing Guidelines is the same as in the Washington Sentencing Guidelines at issue in *Blakely*. That is, that they permit an enhancement of the sentence based on judicial findings. "It would seem to follow therefore that Blakely dooms the guidelines insofar as they require that sentences be based on facts found by a judge." *Id.* at 511. *Internal citations omitted.*

The Seventh Circuit further attacked the foundation of the distinction found by other circuits with the federal Sentencing Guidelines in order to conclude that Blakely does not apply to said guidelines. That is that the fact that the federal Sentencing Guidelines were created by the U.S. Sentencing Commission rather than by the legislature makes a difference to immunized the Guidelines from a constitutional attack.[6] The Circuit reasoned that "the Commission is exercising power delegated to it by Congress, and if a legislature cannot evade what the Supreme Court deems the commands of the Constitution by a multistage sentencing scheme neither, it seems plain, can a regulatory agency." *U.S. v. Booker,* 375 F.3d at 511. Further "the Commission is fully accountable to Congress which can revoke or amend any or all the Guidelines as it sees fit." Id. quoting *Mistretta v. United States,* 488 U.S. 361, 377, 109 S.Ct. 647 (1989). Furthermore, "the issue in *Blakely* was not

sentencing discretion-it was the authority of the sentencing judge to find the facts that determine how that discretion shall be implemented and to do so on the basis of only the civil burden of proof. The vices of the guidelines are thus that they require the sentencing judge to make findings of fact. And that the judge's findings largely determined the sentence given the limits on upward and downward departures." *U.S. v. Booker,* 375 F.3d at 512. *Internal citations omitted.* Those findings of fact, the Seventh Circuit concluded, are precisely what the Supreme Court in *Blakely* "determine[d] to be province of the jury." Id.

The Ninth Circuit reached the same result, *U.S. v. Ameline,* 376 F.3d at 978, and further agreed with the Seventh Circuit that the fact that the federal Sentencing Guidelines were enacted by the Sentencing Commission made no difference that would preclude the application of the *Blakely* decision to the federal Sentencing Guidelines. *Id.* at 976. ("We are unconvinced that the Congressional delegation of authority to the Sentencing Commission to set presumptive sentencing ranges in the first instance creates any meaningful distinction.... We agree with the Seventh Circuit that 'the pattern [of the Guidelines] is the same as that in the Washington statute, and it is hard to believe that the fact that the guidelines are promulgated by the U.S. Sentencing Commission rather than by a legislature can make a difference.'" *Id.* at 977 quoting *U.S. v. Booker,* 375 F.3d at 511.)[7]

---

**6.** As previously discussed the other Circuits made this distinction in order to explain their conclusion that the Blakely decision does not affect the federal Sentencing Guidelines. See *U.S. v. Hammoud,* 381 F.3d at 351; *U.S. v. Piñero,* 377 F.3d at 470–471; *U.S. v. Koch,* 383 F.3d at 441; *U.S. v. Reese,* 382 F.3d at 1311.

**7.** See also J. Boyce F. Martin dissenting Opinion joined by Circuit Judges Daughtrey,

Moore, Cole and Clay in *U.S. v. Koch,* 383 F.3d at 445. ("I fail to see how the fact that Congress delegated its authority to the Sentencing Commission to set presumptive sentencing ranges saves the federal scheme from constitutional attack. The majority's holding contravenes and undermines Blakely by allowing Congress to accomplish indirectly-by delegating authority to the Commission-pre-

## C. A Commentary as to U.S. v. Edwards

Due to several circuits' reliance on *U.S. v. Edwards*, 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998) in order to conclude ·that the *Blakely* decision had no effect over the federal Sentencing Guidelines, the undersigned considers necessary to make a brief observation as to the Supreme Court's decision in this particular case. The circuits used this decision to conclude that since the maximum sentence is the one reflected on the United States Code and not on the federal Sentencing Guidelines and since the Supreme Court in said occasion rejected a Sixth Amendment constitutional challenge to the federal guidelines,[8] the *Blakely* decision did not affect the federal Guidelines. This Court finds, however, that the Supreme Court's decision in *Edwards* does not permit said conclusion.

In *Edwards v. U.S.*, a pre Blakely and pre Apprendi decision, the Supreme Court affirmed a sentence imposed by a district judge, after receiving a general verdict of guilty, based on findings that the illegal conduct involved cocaine and crack.[9] The Supreme Court concluded that "regardless of the jury's actual, or assumed beliefs about the conspiracy, the guidelines nonetheless require[d] the judge to determine whether the 'controlled substances' at issue-and how much of those substances consisted of cocaine, crack or both". *Edwards v. U.S.*, 523 U.S. at 513–514, 118 S.Ct. 1475. The Supreme Court did not address any constitutional claim because the sentences imposed failed to exceed the maximum that the statutes permitted. *Id.* at 515, 118 S.Ct. 1475 ("Of course, petitioners' statutory and constitutional claims would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine only conspiracy...But, as the Government points out, the sentences imposed here were within the statutory limits applicable to a cocaine-only conspiracy, given the quantities of that drug attributed to each petitioner.") Hence, the Court expressly refrained from considering the merits of petitioners' statutory and constitutional claims. *Id.* at 516, 118 S.Ct. 1475. See *U.S. v. Booker* 375 F.3d at 514 (The Court in *Edwards* was affirming a decision by this court, reported at 105 F.3d 1179 (7th Cir., 1997) which does not mention the Sixth Amendment of the constitutional right to a jury or any

---

cisely what we now know the Sixth Amendment prohibits it from doing directly.")

8. See *U.S. v. Piñeiro*, 377 F.3d at 471; *U.S. v. Hammoud*, 381 F.3d at 352; *U.S. v. Reese*, 382 F.3d at 1311 ("It is clear ...that the Supreme Court in *Edwards* viewed the maximum listed in the United States Code as the relevant maximum for Sixth Amendment purposes instead of the range listed in the Federal Sentencing Guidelines."); *U.S. v. Koch*, 383 F.3d at 439–440 ("[I]n *Edwards v. United States*, the Court went one step further: It not only rejected a challenge to enhancements based on judge-made findings, but it also did so in the context of a Sixth Amendment challenge.").

9. In ·said case, the judge had instructed the jury that the government had to prove that the conspiracy involved measurable amounts of cocaine or cocaine base. The defendants alleged that the sentences were unlawful insofar as they were based upon crack. They sustained that the word "or" in the judge's instruction permitting a guilty verdict if the conspiracy involved either cocaine or crack meant that the judge assumed that the conspiracy involved only cocaine (which treatment by the Sentencing Guidelines is more lenient). The Court of Appeals held that the judge need not to assume that only cocaine was involved and further, since the Sentencing Guidelines required the sentencing judge to determine the type and amounts of the drug at issue, the jury's belief as to which drugs were involved was beside the point. The Supreme Court affirmed.

other constitutional issue . . . . . . . . The Court did not opine on the guidelines' consistency with the [Sixth] amendment because that consistency was not challenged. It did not rebuff a Sixth Amendment challenge to the guidelines because there was no Sixth Amendment challenge to the guidelines."); *U.S. v. Ameline*, 376 F.3d at 978 quoting *Edwards v. U.S.*, 523 U.S. at 516, 118 S.Ct. 1475, 140 L.Ed.2d 703("The Court in *Edwards* explicitly stated 'we need not, and we do not consider the merits of petitioners' statutory and constitutional claims." ') Accordingly, the conclusion reached by various circuits that the Supreme Court expressly rejected a Sixth Amendment challenge against the federal Guidelines constitutes a reasoning that is not sustained by the Edwards decision.

### III. Analysis

The first question that must be addressed is the effect, if any, of the Supreme Court's decision in *Blakely v. Washington* over the federal Sentencing Guidelines. That is, if after *Blakely* instead of the Court determining by preponderance of the evidence certain facts in order to consider the enhancement of a sentence beyond the "statutory maximum", that determination must be left to a jury who must reach their factual findings beyond reasonable doubt. Before *Blakely*, the Supreme Court determined that a particular state hate crime, which allowed a judge to make factual determinations by preponderance of evidence, violated defendant's rights since the due process clause required that said factual determinations were determined by a jury beyond reasonable doubt. *Apprendi v. New Jersey* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond reasonable doubt.") In the *Apprendi*'s aftermath, the Supreme Court has concluded that the de-

fendant's constitutional rights are violated when a judge imposes a sentence greater than the maximum he could have impose based on judicial factual findings. *Blakely v. Washington*, 124 S.Ct. at 2537 citing *Ring v. Arizona* 536 U.S. 584, 603–609, 122 S.Ct., 2428, 153 L.Ed.2d 556 (2002). In *Blakely*, the Supreme Court clarified that:

"the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment and the judge exceeds his proper authority." *Blakely v. Washington*, 124 S.Ct. at 2536.

■ Hence, after *Blakely*, in order for a judge to impose a sentence exceeding the 'statutory maximum' as defined by the Supreme Court, without exceeding his authority and respecting the defendant's Sixth Amendment right to a trial by jury, the factual findings in which the trial judge bases his sentence enhancement must be found by a jury beyond a reasonable doubt. Accordingly, any disposition, including the federal Sentencing Guidelines, that compels a judge to impose a sentence that exceeds the maximum sentence that is authorized on the facts *"reflected in the jury verdict or admitted by the defendant" Id.*, is potentially invalid pursuant to the Supreme Court's decision. In other words, should the federal Sentencing Guidelines, as the Washington Sentencing Guidelines at *Blakely*, authorized the judge to enhance a sentence **beyond the**

**maximum sentence** further than *"on the basis of the facts reflected in the jury verdict or admitted by the defendant"*, said sentence violates defendant's Sixth Amendment rights. "As *Apprendi* held, every defendant has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment." *Id.* at 2543. The fact that the federal Sentencing Guidelines were promulgated by the Sentencing Commission pursuant to the Congress delegation does not affect the fact that the Guidelines have force of law. Further, it is Congress' prerogative to ratify, revoke or amend said Guidelines. *Mistretta v. United States*, 488 U.S. 361, 393–94, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Accordingly, as in *Blakely v. Washington*, a disposition that permits the judge to enhance the maximum sentence beyond the factual findings made by a jury or any facts admitted by the defendant is considered invalid. And a sentence enhancement over the "statutory maximum," as defined under *Blakely* based upon judicial factual findings violates defendant's Sixth Amendment right to trial by a jury of defendant's peers.

■ In sum, when a sentencing scheme permits a judge to impose a higher punishment that the jury's verdict by itself does not allow, the judge has exceeded his powers and said sentence violates defendant's Sixth Amendment. *Blakely v. Washington*, 124 S.Ct. at 2537. Since the statutory maximum has been defined as the " 'maximum sentence' a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant"*, *Id.*, *Blakely*, precludes the imposition of an enhanced sentence that the jury's verdict or defendant's admissions, by themselves, do not allow. Accordingly, a sentencing scheme that permits the enhancement of a sentence based on factual findings determined by a judge by preponderance of the evidence rather than found by a jury beyond reasonable doubt does not comply with the defendant's Sixth Amendment rights. Besides, "if a legislature cannot evade...the commands of the Constitution by a multistage sentencing scheme neither[...] can a regulatory agency [the Sentencing Commission] which is simply exercising power delegated to it by Congress." *U.S. v. Booker*, 375 F.3d at 511.

Now, that this Court anticipates that the *Blakely* rational applies to the federal Sentencing Guidelines we must address if the invalidation of the disposition permitting the sentence enhancement over the "statutory maximum" based on judicial findings of fact pursuant to the preponderance of evidence standard has the effect of invalidating the whole sentencing scheme created by the Guidelines or if, for the contrary, the invalid dispositions of the Guidelines are severable. The defendant sustains that the invalid dispositions are not severable. This Court disagrees.

The Court must first clarify that the Blakely majority holding applies only to enhancements and not to statutory schemes involving minimums. *Blakely v. Washington* at — U.S. ——, 124 S.Ct. at 2538 citing *McMillan v. Pennsylvania* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (The Supreme Court distinguished the McMillan case from the case before the Court because the Mc Millan case "involved a sentencing scheme that imposed a statutory minimum if a judge found a particular fact").Of the circuits courts that concluded that the *Blakely* decision affects the federal Sentencing Guidelines only the Ninth Circuit addressed the severability inquiry.[10] The Ninth Circuit held that although the application of cer-

---

10. The Seventh Circuit refrained from discussing the severability aspect since "it was another issue that [was] not briefed or argued to [them]." *U.S. v. Booker* 375 F.3d at 515.

tain procedural aspects of the Sentencing Guidelines violated defendant's Sixth Amendment rights, they were severable. *U.S. v. Ameline,* 376 F.3d at 981. The Ninth Circuit began by explaining that there is a presumption in favor of severability. Id. Accordingly "a court should refrain from invalidating more of the statute is necessary" since "a ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Id. quoting Regan v. Time,* 468 U.S. 641, 652–653, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984). The test of severability is "whether the statute will function in a manner consistent with the intent of Congress." *U.S. v. Ameline,* 376 F.3d at 982 quoting *Alaska Airlines Inc. v. Brock,* 480 U.S. 678, 685, 107 S.Ct. 1476, 94 L.Ed.2d 661.

■ The Supreme Court potentially reflected in *Blakely* that they considered that the invalid statute was severable from the rest of the sentencing scheme. The *Blakely* Court refrained from declaring the Washington statute unconstitutional, on the contrary, they clearly expressed that "[b]y reversing the judgment below, [they] are not [. . .] finding determinate sentencing scheme unconstitutional." *Blakely v. Washington,* 124 S.Ct. at 2540. The Supreme Court further expressed that the case "was not about whether determi-

nate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment."Id. Accordingly, this Court infers that the Supreme Court's intent in *Blakely* was to invalidate only those provisions that violated the Sixth Amendment and not the totality of the sentencing scheme.[11] This Court, as the Ninth Circuit, finds that Congress' objectives in enacting the Sentencing Guidelines, (i.e. "eliminating the indeterminate sentencing system", promoting uniformity and narrowing disparity, *U.S. v. Ameline,* 376 F.3d at 982 citing U.S.S.G. § 1A1.1,cmt 3 (2003)), are respected and promoted if the requirements for judicial fact finding by a preponderance of evidence to enhance a sentence over the "statutory maximum" are severed from the Guidelines. *U.S. v. Ameline,* 376 F.3d at 982.[12]

Since the Court has found that the questioned provisions are potentially affected by *Blakely*'s decision, and as such, its application would violate defendant's Sixth Amendment rights and further the Court concludes that said aspects of the federal Sentencing Guidelines are severable from the rest of the sentencing scheme, defendant's third and fourth inquiries are premature and, hence, not addressed by this Court.[13]

11. Further, the Supreme Court stated that "the Federal Guidelines [were] not before [the Court] and [the Court] express no opinion on them" Id at 2538 n. 9.

12. Defendant argued that if the Court finds that the federal Sentencing Guidelines were non-severable, the real question that must be addressed by the Court is if the Sentencing Reform Act of 1984 was severable. Since the Court has found that the federal Sentencing Guidelines are severable, the Court shall refrain from further analysis.

13. To wit: "If the Court finds that those mandatory provisions of the Sentencing Reform Act, 18 U.S.C. § 3553(b) are constitutional, even post-*Blakely,* whether the Court has au-

thority to submit to the jury's consideration matters which the Sentencing Reform Act require the Judge and not the Jury to determine; (4)Should the Court understand that the Sentencing Reform Act allows for submission to the jury matters that are reserved by the Sentencing Reform Act to the Court, whether prudence, due process and simple fairness—and avoidance of prejudice to defendant—require that the Court do so in a bifurcated trial, akin to the procedures followed in capital prosecutions or in criminal forfeitures." *Motion for Court to Declare the Sentencing Reform Act's Mandatory Provisions, 18 U.S.C. § 3553(b) Unconstitutional and for Further Remedy as a Result Thereof* (Docket No. 168 at p. 1–2).

98

## IV. Conclusion

The questions raised by the defendant in this case are, at this moment, before the Supreme Court. A decision by the Supreme Court is imminent. However, since this case is in a pre-trial stage where the speedy trial period is to elapse, and since this Court concluded that the federal Sentencing Guidelines were affected by the *Blakely* decision but that however, the specific dispositions which application violates the defendant's Sixth Amendment rights were severable, until the Supreme Court issues its decision, the Court shall bifurcate the proceedings into two stages: (1) the trial stage where the prosecutor must prove beyond a reasonable doubt to a jury the elements of the felony that is imputed in the indictment and; (2) a sentencing stage were the prosecutor must establish before a jury, beyond reasonable doubt, any necessary element in order for the judge to be able to impose a sentence over the "statutory maximum", as expressed under Blakely, without violating the defendant's Sixth Amendment rights. However, this matter shall be tried simultaneously before the same jury.

Should the Supreme Court decide that the *Blakely* decision applies to the federal Sentencing Guidelines, the defendant's right in the instant case would have been protected. Should the Supreme Court decide otherwise, then the Court shall impose the sentence based on the evidence presented by the prosecutor but could make judicial factual findings pursuant to the preponderance of evidence standard. Even if the entire sentencing scheme be found unconstitutional except the mitigat-ing factors, the Court may sentence the defendant pursuant to the statutory maximum and the facts found by the jury. Accordingly, the Court hereby **ADOPTS** the Magistrate's recommendation as to that the sentencing enhancement factors must be submitted to the jury. Therefore **GRANTS** in part and **DENIES** in part defendant's request. Defendant's request that the Blakely decision be applied to the federal Sentencing Guidelines is hereby **GRANTED**. However, defendant's request for the Court to refrain from submitting to the jury factual questions as to the enhancement of the sentence is hereby **DENIED.**[14]

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

VELEZ–RIVE, United States Magistrate Judge.

### *Introduction*

Defendant José A. Rivera Calderón's Motion for Court to Declare the Sentencing Reform Act's Mandatory Provisions Unconstitutional was referred by the Court for report and recommendation (Docket No. 168, 196). The government filed its Reply on August 11, 2004 (Docket No. 173).[1]

Defendant Rivera Calderón, through his counsel Thomas Lincoln, raised numerous constitutional issues to the federal sentencing guideline mandatory aspects, including whether its provisions could be severed post *Blakely.*[2] Defendant's contention is that the *Blakely* decision, in declaring the Washington's state sentencing guidelines

---

14. The Jury Trial is to proceed. The Court expects the *Blakely* matter to be decided by the Supreme Court prior to Sentencing thereby further illustrating this trial court.

1. The court granted counsel for codefendants Rosario Rivas', Pomales Pizarro's and Rivera's request to join this motion. See minutes of November 3, 2004 (Docket No. 216). Thus, the determinations and recommendations herein are made extensive to these defendants.

2. *Blakely v. Washington,* 542 U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

unconstitutional, does apply to the federal sentencing guidelines and to the Sentencing Reform Act. Deft's Motion at p. 3.

The government's position throughout the various related briefs has varied as to severability and unconstitutionality on the enhancement portions of the guidelines. Its position in this case and the simplicity of its reply serves little to dispel the web on the convoluted aspects raised by district and circuit cases.

### Background

In the aftermath of *Blakely v. Washington*, 542 U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court, prompted by the turmoil through numerous federal court decisions as to the constitutionality of the Federal Sentencing Guidelines, determined there was ground to entertain the issue on the first Monday of October 2004.[3] *See United States v. Booker*, 542 U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838, 73 U.S.L.W. 3073, 3074, *cert. granted* Aug. 2, 2004; *United States v. Fanfan*, 542 U.S. ——, 125 S.Ct. 12, 159 L.Ed.2d 838, 73 U.S.L.W. 3073, 3074, *cert. granted* Aug. 2, 2004.

At this juncture, our Highest Court is still to pronounce itself. However, speedy trial considerations for defendant in the case before this Magistrate Judge prompts some *interim* disposition of the pending issue. To elucidate some of the issues raised, we are aided by the parties, the *amicus curie* briefs, and the transcripts of oral arguments presented to the Supreme Court in *Booker* and *Fanfan* cases that are deeply intertwined with above defendant's submission.

### *Legal Discussion*
### Constitutionality.

When constitutional issues need not be addressed, there being other less strenuous path to follow, we are for the most part dealing with construing state statutes and sovereign aspects not present in the instant case insofar as federally ordained laws. Notwithstanding, in this District Court and until the Supreme Court rules otherwise, the law of this First Circuit remains insofar that the federal Sentencing Guidelines are held constitutional. Whether *Blakely* has fatally undermined this line of authority is an unsettled question at the moment and, whatever the ultimate outcome, the answer is neither clear nor obvious. *See United States v. Cordoza–Estrada*, 385 F.3d 56, 60 (1st Cir. 2004)(per curiam). *See also United States v. Del Rosario*, 388 F.3d 1, 2004 WL 2426239, (1st Cir.2004). The parties should nonetheless be granted an opportunity to renew the issue once the Supreme Court's decision on the federal sentencing guidelines is issued.

In *Blakely* the Supreme Court held that a sentence that was enhanced by the

---

3. In *Blakely,* the Supreme Court held that the Sixth Amendment right to trial by jury was violated by imposition of a sentence above the "statutory maximum of the standard range" in the State of Washington's sentencing guidelines, because the sentence enhancement was based on aggravating facts that were determined by judicial, rather than jury fact finding. As such, the Sixth Amendment is deemed violated by imposition of a sentence greater than "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.... [T]he relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Thus, the Sixth Amendment is violated by judicial fact finding of facts germane to the application of a sentence enhancement. However, Blakely also asserts that the Sixth Amendment is not violated if the defendant admits or stipulates to the facts germane to application of the sentence enhancement and further instructs that nothing prevents the defendant from waiving his right to a jury trial of sentence enhancements.

Washington state statutes on the basis of factors found by the judge, rather than the jury, violated defendant's constitutional right to trial by jury. Still, *Blakely* did not conclusively require that it be made extensive to federal sentencing guidelines. The Court of Appeals for the Fifth Circuit, analyzing *Blakely*, opined in *United States v. Piñeiro*, 377 F.3d 464 (5th Cir.2004), that the Federal Sentencing Guidelines were not affected by it since the Supreme Court noted particularly in *Blakely*, that it expressed no opinion on the federal sentencing guidelines. *Blakely*, 542 U.S. at —— n. 9, 124 S.Ct. at 2538 n. 9.

There are numerous reported and unreported decisions concerning *Blakely's* applicability to the federal sentencing guidelines, as well as a split in the Circuit Courts of Appeals. The Fourth, Fifth, Sixth, and Eleventh Circuits have considered *Blakely* as not applicable to the federal sentencing guidelines. The Second Circuit has also certified three questions to the Supreme Court concerning the constitutionality of the federal sentencing guidelines. *See U.S. v. Hammoud*, 381 F.3d 316, 2004 WL 2005622 (4th Cir.Sep.8, 2004); *U.S. v. Piñeiro, supra* at 464; *U.S. v. Koch*, 383 F.3d 436 (6th Cir.Aug.26, 2004); *U.S. v. Reese*, 382 F.3d 1308 (11th Cir.2004); *U.S. v. Penaranda*, 375 F.3d 238 (2d Cir.2004). The Seventh Circuit in *U.S. v. Booker*, 375 F.3d 508 (7th Cir. 2004), *cert. granted*, 125 S.Ct. 11, 159 L.Ed.2d 838, 73 USLW 3073 (2004) held *Blakely* was applicable to the federal sentencing guidelines. Similarly, the Ninth Circuit held that *Blakely* applies to the federal sentencing guidelines, and that infirm guidelines were severable. *U.S. v. Ameline*, 376 F.3d 967 (9th Cir.2004).

Above defendant Rivera–Calderón's proposition is that the federal Sentencing Guidelines and the Sentencing Reform Act raise matters of constitutionality after *Blakely*. If unconstitutional, there remains to be determined whether there are severable provisions that would allow the Sentencing Guidelines to survive, in particular, those related to enhancement of any sentence to be imposed which at the present are determined by a judge under a preponderance of the evidence. In addition, defendant argues that as to severability, courts should not be allowed to submit to the jury a special verdict as to any upward adjustments sought by the government since the statute as drafted by the legislators provides for only the judge to increase a sentence within the statutory minimum and maximum terms therein included. Still, at one time defendant submits that non-severability is the more likely conclusion because of the comprehensive nature of the Guidelines and shortly thereafter at another time submits that the loss of just some of those guidelines in some cases, insofar as its severability, probably does not vitiate congressional intent for which severability is then considered the more likely conclusion.

Defendant then addresses that the legal analysis should bear on the legislation and not on the Sentencing Guidelines promulgated thereunder since rarely the Supreme Court has applied severability analysis to regulatory schemes. Under such premise, defendant considers that application of the *Blakely* rationale, even if it invalidates some of the Sentencing Guidelines and even if it produces less severity in sentencing, would not affect the primary legislative purpose of the Sentencing Reform Act and its main aim of fostering uniformity and reduction of unwarranted disparities sought by Congress.

A perusal of the questions raised during oral arguments in the *Fanfan* and *Booker* cases ran consonant with the above defendant's contentions when addressing those sections of the Sentencing Guidelines that might be required to take out so as to get the sentencing judge effectively out of the

fact-finding sentencing process. Reference was therein made to sections 3553(b), 3742(e), substituting the "shall" therein for the "may" to make the guidelines advisory and/or permissive instead of binding and/or assuming that instances of reference to "court" may include "jury" determinations.

This Magistrate Judge's main concern is that, in the absence of a clear frame of work on the federal sentencing guidelines from the Supreme Court at this juncture, and having defendant's Sixth Amendment rights at issue, a ruling becomes necessary before defendant's trial is held so that the jury considers and determines beyond reasonable doubt matters which at this time are reserved for the sentencing court under the federal Sentencing Guidelines by a preponderance of the evidence. Such a concern need not apply in the presence of plea negotiations where a defendant has agreed to stipulated facts and thereafter consents for a judicial officer to make fact finding determinations upon sentencing.

■ Prior to *Blakely*,[4] the Court of Appeals for the First Circuit and other circuits courts had applied the rationale enunciated in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which was deemed not applicable to guideline factors that was unrelated to statutory maximums. In *Apprendi*, a state hate crime statute which allowed a judge to make a factual determination, based on preponderance of evidence, which would increase a maximum sentence of defendant convicted of a second degree offense of unlawful possession of prohibited weapon from ten to 20 years, thereby imposing punishment identical to that state imposed for first degree crime, was considered to have violated due process since the due process clause required such factual determinations to be made by jury

on basis of proof beyond reasonable doubt. As such, the Fourteenth Amendment right to due process and the Sixth Amendment right to trial by jury entitle a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.

However, when constitutional limitations are not involved, consideration geared toward prior court precedent marshals on a wholly different character and it serves little purpose to analyze related but dissimilar court rulings on sentencing application. As such, the decision to be rendered in the pending *Booker* and *Fanfan* cases now pending before the Supreme Court, contrary to *Blakely*, would address directly issues of constitutionality, application, and construction of the federal sentencing guideline.

**Severability.**

The United States Sentencing Commission, created under the Sentencing Reform Act of 1984, is an independent agency placed within the judiciary, that promulgates the Sentencing Guidelines and its amendments and clarifications. It submits to Congress on the first day of May of each year, amendments and modifications, and the effective date of such amendments falls and these are considered adopted when Congress fails to further act on same. 28 U.S.C. § 994(p). As such, it might be generally questioned that being these guidelines binding on judges at the time of sentencing and not merely suggestive, how an agency that has been delegated lawmaking authority restrained solely by Congress right to refuse its proposed amendments each May could be allowed to affect substantial rights of defendants without offending the Constitution when direct Congress' actions of a similar fashion would still need to past constitutional

4. *U.S. v. Baltas,* 236 F.3d 27, 40–41 (1st Cir.  2001).

muster. Whether the recent *Blakely* decision overrules *sub silentio* the rationale that serves as support for these kind of guidelines being constitutionally sound will soon be clarified. Meanwhile, there is still pending issues of what can remain of the Sentencing Guidelines that will safeguard defendant's constitutional rights and the provisions of the sentencing procedure that are still in force and if through an analysis of severability that ultimately turns on an analysis of congressional intent would fulfill this purpose. *See generally Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987) ("Congress could not have intended a constitutionally flawed provision to be severed from the remainder of the statute if the balance of the legislation is incapable of functioning independently"); *Hill v. Wallace*, 259 U.S. 44, 70–72, 42 S.Ct. 453, 458–459, 66 L.Ed. 822 (1922); *United States v. McKinney*, 2004 WL 2315775, (N.D.Fla.2004).

■ A court shall adhere to the elementary principle that the same statute may be in part constitutional and in part unconstitutional, and if the parts are wholly independent from each other, that which is constitutional may stand while that which is unconstitutional will be rejected. Toward this end a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it. When validity of act of Congress is drawn in question, and serious doubt of constitutionality is raised, court will first ascertain whether construction of statute is fairly possible by which question may be avoided. *McConnell v. Federal Election Com'n*, 540 U.S. 93, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003). *See Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932); *see also Boos v. Barry*, 485 U.S. 312, 331, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988); *New York v. Ferber*, 458 U.S. 747, 769, n. 24, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

Additionally, there are fact determinations under the Sentencing Guidelines that would affect the guideline range application through adjustment or departures that are not amenable for fact-finding jury determination, as would be the prior criminal history or obstruction of justice for perjury during the criminal proceedings being entertained. Furthermore, in a conspiracy case, to apply the mandatory minimum to a particular co-conspirator, the sentencing court must make a specific finding, supportable by a preponderance of the evidence, ascribing the triggering amount to that co-conspirator. *See United States v. Colón–Solís*, 354 F.3d 101, 103 (1st Cir.2004); *United States v. Swiney*, 203 F.3d 397, 401–06 (6th Cir.2000); *United States v. Becerra*, 992 F.2d 960, 967 n. 2 (9th Cir.1993); *United States v. Gilliam*, 987 F.2d 1009, 1013–14 (4th Cir.1993).

Notwithstanding, *Apprendi* has resulted in verdict questions to juries about drug quantity, which questions were asked only if the jury had found guilt on the underlying offense. Before *Apprendi* courts were certain that drug quantity was merely a sentencing issue, not an essential part of the conviction. *See, e.g., United States v. Lindia*, 82 F.3d 1154, 1160–61 (1st Cir. 1996). However, *Apprendi* indicated that where drug quantity elevated the statutory maximum sentence, it had to be proven beyond a reasonable doubt to the jury, but judges could still make all other drug quantity determinations at sentencing. *See, e.g., United States v. López–López*, 282 F.3d 1, 22 (1st Cir.2002). In the post *Blakely* world, however, various courts have ruled that all sentence-enhancing factors (other than criminal history) must be proven to a jury beyond a reasonable doubt. *See also United States v. Pérez*, 338 F.Supp.2d 154 (D.Me.2004).

### Conclusion

Still, whether Sentencing Guidelines be finally found constitutional or not, the ap-

propriate remedy thereunder could still be ruled as prospective. Herein defendant, however, need not linger for such a delay after submitting its timely objection, absent any waiver on his part. In light of the above discussed and, since the First Circuit Court of Appeals has not yet established that Sentencing Guidelines are affected by the *Blakely* decision, we are in no position to make a determination at this juncture on the constitutionality of the guidelines. We need to wait for the Supreme Court's ruling in the pending cases to clarify the facts a judge can find and the facts a jury can find, as well as the constitutionality and severability of the same.

Accordingly, it is recommended that those sentencing enhancement factors be submitted to the jury pursuant to a strict application of *Apprendi.* Towards this purpose, the Court may allow a special verdict form to determine any upward enhancement to defendant's sentence in this case since the government has not submitted in the indictment any sentencing provisions, as several other districts have engaged lately as an *interim* solution to other defendant's contention as to application of *Blakely.* The government should be able, without undue burden of proof and in light of the defendant's Sixth Amendment entitlement, to present those aspects of the offense, such as drug quan-

tity and the alleged use of firearm in furtherance thereof,[5] before a jury during its presentation of its trial evidence, since the government will most probably be expecting to submit these enhancements to the judge post-trial for sentencing purposes.[6] Still, this consideration has presented some opposition against surplusage by adding to the indictment the sentencing enhancements.

However, if the Supreme Court were to hold that the Sentencing Guidelines were unconstitutional under the Sixth Amendment only as applied to their method of determining sentencing enhancements, the Government would then need to, in the words of Justice Scalia at oral argument in *Booker,* "work out how it wants to find its way around the problem." (See Tr. of Oral Arg. in *United States v. Booker,* 2004 WL 2331491 (2004)).[7] If the Supreme Court so would hold, and the Government did not present the sentencing enhancements to the jury, then any defendant found guilty could not receive any enhancements but would necessarily be sentenced within the base guidelines range for the crime at issue. *Cf. United States v. Gotti,* 2004 WL 2389755 (S.D.N.Y.2004).

In the alternative, at the time of imposition of sentencing as to defendant who raises objections to the application of the Sentencing Guidelines, and if still pending resolution as to their constitutionality, words to the effect that due consideration

---

**5.** Still, the existence of a defendant's prior criminal record is exempted from the jury trial requirement announced in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which is the basis of the Blakely holding. See *Apprendi,* 530 U.S. at 487–88, 120 S.Ct. 2348 (*distinguishing Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)). *U.S. v. Jackson,* 2004 WL 2181136, *7 (S.D.N.Y.2004).

**6.** Justice Kennedy addresses, during oral arguments in *Booker* and *Fanfan* whether there

are some facts that are like elements of the offense and some that are not, such as the amount of drugs, was there a weapon, was there violence performed against the victim, and how can it be distinguished the permitted kind of fact that the judge could find and those that could be for the jury. Transcript 10-4-2004, pp. 25–26.

**7.** Also available at: (*http://www.supremecourtus.go* v/oral_arguments/argument_transcripts/04–104.pdf).

of the circumstances of the offense and of the individual being sentenced in the exercise of the sentencing judge's discretion, insofar as a description of all facts that bear on a sentence and not just the guideline facts, might be sufficient cure. However, the expertise of sentencing court judges and the acumen of their experiences as to sentencing, are for the most the best guidance tool in this process, far from this Magistrate Judge's experience as post-trial proceedings dealing with felony convictions.

**IT IS SO RECOMMENDED.**

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch · Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").